UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

MORPHO DETECTION, INC.,

Plaintiff,

v.                                          Civil No. 2:11cv498

SMITHS DETECTION INC.,

Defendant.

## OPINION AND ORDER

This matter is before the Court on a post-trial motion for prejudgment and post-judgment interest and damages for ongoing patent infringement filed by plaintiff Morpho Detection, Inc. ("Morpho"). Defendant Smiths Detection, Inc. ("Smiths") disputes the rate of prejudgment interest sought by Morpho as well as the quantum of damages sought for Smiths' prejudgment and post-judgment infringement.[1]  For the reasons discussed below, Morpho's motion is **GRANTED**, in part, and **DENIED**, in part.

### I. Prejudgment Interest

Morpho's instant motion seeks prejudgment interest, which is intended to compensate a patent owner for the time period between the date of infringement and the date of the judgment in

---

[1] A familiarity with the case file and trial result is assumed.  For additional details, see this Court's post-trial Opinion and Order dated July 11, 2013.  ECF No. 410.

order to "make the patent owner whole." General Motors Corp. v. Devex Corp., 461 U.S. 648, 655-56 (1983).  Smiths does not dispute the fact that, based on the jury's verdict, Morpho is entitled to prejudgment interest, but instead argues that the Court should award such interest at the 3-month Treasury bill rate (approximately .1%) rather than the prime rate (3.25%) sought by Morpho.

"The rate of prejudgment interest and whether it should be compounded or uncompounded are matters left largely to the discretion of the district court." Bio-Rad Laboratories, Inc. v. Nicolet Instrument Corp., 807 F.2d 964, 969 (Fed. Cir. 1986) (citations omitted).  In exercising such discretion, a district court "must be guided by the purpose of prejudgment interest, which is 'to ensure that the patent owner is placed in as good a position as he would have been [in] had the infringer entered into a reasonable royalty agreement.'"  Id. (quoting Devex Corp., 461 U.S. at 655).  Although, over time, district courts have selected varying prejudgment interest rates in patent cases, district courts "most often award either the prime rate or the U.S. Treasury rate." I/P Engine, Inc. v. AOL Inc., No. 2:11cv512, 2013 WL 3991472, at *2 (E.D. Va. Aug. 1, 2013).

Exercising the discretion afforded to this Court, the Court **GRANTS** Morpho's request for prejudgment interest at the prime rate, compounded quarterly. See id. at *4 (awarding prejudgment

interest at "the prime rate, compounded quarterly"). As other district courts have recognized, "the prime rate best compensates a patentee for lost revenues during the period of infringement because the prime rate represents the cost of borrowing money, which is 'a better measure of the harm suffered as a result of the loss of the use of money over time.'" IMX, Inc. v. LendingTree, LLC, 469 F. Supp. 2d 203, 227 (D. Del. 2007) (quoting Mars, Inc. v. Conlux USA Corp., 818 F. Supp. 707, 720-21 (D. Del. 1993), aff'd, 16 F.3d 421, 1993 WL 516659 (Fed. Cir. 1993)). In contrast, "[t]he 3 month Treasury Bill rate is the cost of raising funds by the Government," and thus does not generally reflect a corporation's loss of use of money over time. Stryker Corp. v. Intermedics Orthopedics, Inc., 891 F. Supp. 751, 833 (E.D.N.Y. 1995).[2]

## II. Post-judgment Interest

Morpho's motion requests post-judgment interest at the statutory rate set forth in 28 U.S.C. § 1961. Morpho argues

---

[2] Although Smiths argues that Morpho has not advanced facts to prove why an award at the prime rate is necessary in this case, an award at the 3-month Treasury Bill rate, which is currently approximately one-tenth of one percent, would deprive Morpho of virtually any prejudgment interest award and thus does not appear to put Morpho "in as good a position as [it] would have been had the infringer entered into a reasonable royalty agreement" when the compensable infringement began in the fall of 2011. Devex Corp., 461 U.S. at 655; see also Uniroyal, Inc. v. Rudkin-Wiley Corp., 939 F.2d 1540, 1545 (Fed. Cir. 1991) (noting that a patentee is not required to demonstrate that "it borrowed at the prime rate in order to be entitled to prejudgment interest at that rate" and that a district court's wide-latitude permits prejudgment interest "at or above the prime rate").

that post-judgment interest should apply to each element of the
judgment, "including any prejudgment interest awarded by the
Court."  Morpho Damages Mem. 4, ECF No. 375 (citing Quesinberry
v. Life Ins. Co. of North America, 987 F.2d 1017, 1031 (4th Cir.
1993)).  Based on the jury's verdict and this Court's prior
post-trial rulings, Smiths does not contest Morpho's request for
post-judgment interest.  Accordingly, the Court **GRANTS** Morpho's
request for post-judgment interest on each element of the
judgment, to be calculated as set forth in 28 U.S.C. § 1961.

### III. Pre-verdict Infringement Accounting

Although the jury's verdict was returned on December 11,
2012, the jury's damages award was based only on Smiths'
infringing sales through September 6, 2012.  In the intervening
period between September 6, 2012 and the date of the judgment[3]
(the "accounting period"), Smiths sold more than one hundred
infringing units to the Transportation Security Agency ("TSA"),[4]
and eighteen infringing units to other customers.  Morpho seeks
a damages award on all such units, to include a combination of
lost profits and reasonable royalty payments consistent with the
jury's verdict.  Smiths argues that Morpho may only recover

---

[3] The Clerk's judgment was entered on December 19, 2012.  ECF No. 365.

[4] The publicly available versions of the parties' post-trial briefs
redact the confidential details regarding Smiths' sale to TSA.  As the
specific quantity and sales price of units sold to TSA is not directly
relevant to this Court's ruling, the Court will simply refer to the
sale to TSA as involving "more than one hundred units."

4

damages for the eighteen units sold to customers other than TSA because TSA has assumed liability for Smiths' infringement pursuant to 28 U.S.C. § 1498(a). Smiths further argues that Morpho is not entitled to lost profits for any of the sales made during the accounting period. As set forth below, the Court agrees with Smiths that Morpho may only recover damages <u>in this Court</u> for the eighteen units sold to customers other than TSA. However, as to such sales, the Court agrees with Morpho and finds that Morpho is entitled to a mix of lost profits and reasonable royalty compensation, consistent with the jury's damages award.

### A. Governmental Assumption of Liability

Pursuant to 28 U.S.C. § 1498(a):

> Whenever an invention described in and covered by a patent of the United States is used or <u>manufactured</u> by or <u>for the United States</u> without license of the owner thereof or lawful right to use or manufacture the same, the owner's remedy shall be by action against the United States in the United States Court of Federal Claims for the recovery of his reasonable and <u>entire compensation</u> for such use and manufacture.

<u>Id.</u> (emphasis added). Although such statutory provision is indisputably a waiver of the government's sovereign immunity for direct infringement of a patent, the Federal Circuit and United States Supreme Court have recognized that section 1498(a) "'is more than a waiver of immunity and effects an assumption of liability by the government.'" <u>Advanced Software Design Corp.</u>

5

v. Fed. Res. Bank, 583 F.3d 1371, 1375 (Fed. Cir. 2009) (quoting Richmond Screw Anchor Co. v. United States, 275 U.S. 331, 344 (1928)).

Here, based on the jury's verdict of infringement, it appears to be undisputed that: (1) Smiths sold more than one hundred infringing devices to TSA in late September of 2012; (2) the jury never considered such sales to TSA because Smiths did not produce the relevant sales information pre-trial, and was only ordered at trial to produce sales data through September 6, 2012; (3) Smiths' sale to TSA was the sale of devices manufactured "for the United States"; (4) in January of 2013, TSA issued an "authorization and consent" amendment to its contract with Smiths permitting the use of any United States patent in order to complete delivery of the devices sold pursuant to the September 2012 contract; and (5) it is permissible under the law for the government to retroactively issue its "authorization and consent."  Notwithstanding such facts, Morpho argues that this Court should award it damages on Smiths' infringing sales to TSA because Smiths waived its § 1498(a) affirmative defense by failing to pursue it at trial. Morpho separately argues that this Court should award damages to Smiths for sales to TSA based on the jury's finding that Smiths was responsible for "indirect infringement" of Morpho's patent.

### i. Waiver

The Court rejects Morpho's "waiver" argument based on the nature of the evidence adduced at trial.  It is undisputed that Smiths properly raised § 1498 as an affirmative defense in its Answer.  Morpho thereafter filed a motion in limine to preclude Smiths from raising such defense at trial and, before this Court issued its ruling on such motion, Smiths voluntarily opted not to pursue such affirmative defense before the jury.  As Morpho appears to acknowledge, Smiths' decision on such issue was presumably based on the fact that the eighty-six infringing sales that were before the jury were either made to non-governmental customers or to governmental customers who had not assumed liability for any infringement.  See Morpho Damages Reply Mem. 3-4, ECF No. 402; see also Morpho Mo. in Limine, ECF No. 186 (indicating that Smiths' sales records indicate that the relevant sales that would be before the jury were made to "many private companies").

Although Smiths' decision not to pursue such defense at trial clearly precluded Smiths from later arguing that it was immune from liability as to any of the eighty-six infringing sales that were before the jury, Morpho has failed to cite any case law or other persuasive authority to demonstrate that Smiths "waived" such defense as to Smiths' sales to the U.S.

7

government that were made shortly[5] before trial and were simply not before the jury. Furthermore, it appears that requiring Smiths to put on such defense at trial in order to "preserve" it for unrelated sales that were not in evidence at trial would have introduced an irrelevant legal theory that undoubtedly would have confused the jury. Although the timing of Smiths' sale to TSA has convinced Morpho that Smiths engaged in intentional discovery abuses in an effort to conceal large scale infringement from Morpho, and ultimately from the jury, Morpho's "waiver" argument appears to be more akin to a discovery sanctions argument than an argument grounded in waiver doctrine.

Notwithstanding any possibility that Morpho's allegations of discovery abuses ring true, Morpho fails to demonstrate that "waiver" occurs when a party does not advance a defense at trial that is relevant only to infringing sales that were simply not part of the trial evidence. As stated at trial, all sales made during the period between the close of discovery (September 6, 2012) and the date of the judgment would be accounted for post-trial. Pursuant to federal statute, "[w]hen the damages are not

---

[5] The crux of Morpho's frustration appears to be that Smiths' large-quantity sale to TSA was made more than two months before trial and Smiths appears to have had more than sufficient time to report such sale to Morpho as part of its ongoing discovery obligations. Although Morpho's timing argument appears well-taken, Morpho failed to file a pre-trial motion seeking to compel production of such information. Accordingly, at this stage in the proceedings and absent any findings of discovery abuses by a Magistrate Judge or the undersigned Judge, Morpho is simply surmising that Smiths initially abused the discovery process to conceal such sales information from the jury.

found by a jury, the court shall assess them." 35 U.S.C. § 284. Here, in addressing the measure of such damages, Smiths has asserted a defense that is only applicable to a specific sale made during the accounting period and such defense was previously asserted in Smiths' Answer. Furthermore, it was Morpho that sought to prevent Smiths from introducing such theory of defense at trial through filing a motion in limine. Based on such facts, the Court does not find that the § 1498 defense was "waived" when it was not pursued at trial due to its indisputable lack of relevance to any of the trial evidence before the jury.[6]

### ii. Indirect Infringement

The Court similarly rejects Morpho's contention that it should recover damages in this Court for sales made to TSA on the theory of "indirect" or "contributory" infringement. See 35 U.S.C. § 271(b)-(c). First, the jury's verdict on indirect and

---

[6] Morpho notes in its reply brief that the Federal Circuit has recognized that a § 1498 defense, "'[i]f appropriate, should be resolved by summary judgment under Rule 56 . . . .'" Morpho Damages Reply Mem. 4 n.3, ECF No. 402 (quoting Toxgon Corp. v. BNFL, Inc., 312 F.3d 1379, 1382 (Fed. Cir. 2002)). However, if the only sales to which such defense is relevant occur shortly before trial and are not before the jury, and the Defendant has timely raised such affirmative defense in its Answer, this Court is unaware of any rule that would preclude the Court from resolving such defense as a matter of law while conducting a post-trial accounting. Notably, as discussed herein, Morpho does not dispute any of the facts advanced by Smiths that demonstrate that § 1498 is a viable defense in this case. Accordingly, as there are no material factual disputes to be reserved for the jury, Smiths' § 1498 defense is appropriately determined by the Court as a matter of law.

contributory infringement theories were limited to the sales
before the jury, which were purportedly made to customers other
than TSA. Accordingly, the jury verdict does not conclusively
demonstrate that Smiths contributed to or actively induced TSA
to use Smiths' product in a manner that violates the relevant
method claims of Morpho's patent.

Second, and more compelling, the case law cited by Morpho
on this issue fails to establish that it is appropriate to hold
a government contractor liable for indirect infringement when
such contractor is also liable for direct infringement and the
United States government has assumed liability for such
contractor's direct infringement pursuant to § 1498(a). See
Gargoyles Inc. v. United States, 113 F.3d 1572, 1580 (Fed. Cir.
1997); Decca Ltd. v. United States, 640 F.2d 1156, 1167 (Ct. Cl.
1980). Although such cases purportedly stand for the
proposition that the government has not waived its sovereign
immunity for indirect/contributory infringement under § 271(b)
or § 271(c), such cases do not directly analyze the liability of
a contractor who is manufacturing an infringing product for the
United States government and purportedly contributing towards or
inducing the government to use such product in an infringing
manner.

Turning to the language of § 1498(a), such statute states
that whenever an invention covered by a U.S. patent "is used or

10

manufactured <u>by or for</u> the United States" without a license or a lawful right to do so, "the owner's remedy shall be by action against the United States in the United States Court of Federal Claims for the recovery of his reasonable <u>and entire compensation</u> for such use and manufacture." 28 U.S.C. § 1498(a) (emphasis added). Such language demonstrates that the <u>sole</u> remedy of a patent owner in such circumstances is a suit against the United States in the Court of Federal Claims and that the relief obtained in that court is the "entire compensation" for both the manufacture and the use of the patented invention.

In addition to the plain language of the statute, case law from the United States Supreme Court and the Federal Circuit both support the above interpretation of the statutory text. In <u>Zoltek Corp. v. United States</u>, 672 F.3d 1309, 1316 (Fed. Cir. 2012), the Federal Circuit recently discussed, at length, the evolution of § 1498 since its initial passage in 1910. Notably, in 1918, in the midst of World War I and shortly after the Supreme Court decided a case interpreting the then-operative version of § 1498 as failing to shield warship contractors from patent infringement liability, Congress amended the statute to include the language referencing manufacture "for" the United States as well the language indicating that the statutorily proscribed remedy in the Court of Federal Claims would be the

"entire compensation" for any infringing use and manufacture. Id. at 1315-16. As noted by the Federal Circuit in Zoltek:

> As a result of the [1918] amendment, the Government not only waived sovereign immunity for its own unlawful use or manufacture of a patented invention, but, in most cases, assumed liability when its contractors did so. Moreover, when applicable, <u>the amendment made the specified remedy exclusive.</u>

Id. at 1316 (citation omitted) (emphasis added). The statutory analysis in Zoltek draws heavily from the Supreme Court's prior opinion in Richmond Screw Anchor Co. v. United States, 275 U.S. 331 (1928), in which the Supreme Court described the 1918 amendment as follows:

> The purpose of the amendment was to relieve the contractor <u>entirely from liability of every kind for the infringement of patents in manufacturing anything for the government</u>, and to limit the owner of the patent and his assigns and all claiming through or under him to suit against the United States in the Court of Claims for the recovery of his reasonable and entire compensation for such use and manufacture. The word 'entire' emphasizes the exclusive and comprehensive character of the remedy provided. As the Solicitor General says in his brief with respect to the act, it is more than a waiver of immunity and effects an assumption of liability by the government.

Id. at 343-44 (emphasis added).

Accordingly, it is clear that the plain language of § 1498(a) directly aligns with Congress' purpose as interpreted by the Federal Circuit recently, and the Supreme Court nearly a century ago. That purpose was to "'relieve the contractor <u>entirely from liability of every kind</u> for the infringement of

12

patents in manufacturing anything for the government' in order 'to stimulate contractors to furnish what was needed for [World War I], <u>without fear of becoming liable themselves</u> for infringements.'" <u>Zoltek Corp.</u>, 672 F.3d at 1324 (en banc)[7] (quoting <u>Richmond Screw</u>, 275 U.S. at 343-45) (emphasis added). Morpho's argument therefore fails based on the plain language of the statute, which provides that once the United States has accepted responsibility for the direct infringement of its contractor, the <u>sole remedy</u> against the United States or such government contractor is reasonable compensation obtained in the Court of Federal Claims. The fact that Smiths may have committed some form of indirect infringement, <u>in addition to</u> committing direct infringement by manufacturing and selling infringing devices to TSA, is insufficient to undercut the clear directive in § 1498(a) as to the exclusive nature of the remedy provided therein.[8]

---

[7] The Federal Circuit's opinion in <u>Zoltek</u> expressly overruled prior Federal Circuit precedent, including an earlier opinion in that case, and in order to do so, a portion of the opinion was en banc.

[8] Although this Court's ruling is based on the plain language of § 1498(a), the Court separately notes that the rule espoused by Morpho could eviscerate the purpose of the statute. Under Morpho's interpretation, if a government contractor directly infringed on a patent by manufacturing an infringing product for the government, but in doing so, also committed some form of indirect infringement, the government's assumption of liability under § 1498 would not operate to insulate the supplier from a civil suit for infringement. Accordingly, the statutory "immunity" established by Congress for government contractors, would be ineffective, and the statute would therefore fail to "'stimulate contractors to furnish what [is]

13

In addition to the above, the Court notes that the case law relied on by Morpho to support the proposition that the United States government can never be held responsible for indirect infringement pursuant to § 1498 appears to have been called into question by the en banc portion of the Zoltek opinion, decided last year. Although the Federal Circuit's Zoltek opinion was not addressing indirect infringement under 35 U.S.C. § 271(b) or § 271(c), it directly addressed the interplay between § 1498 and § 271 in order to determine whether § 1498(a) government liability is necessarily predicated on § 271(a) direct infringement liability (as held in prior published Federal Circuit opinions), or whether § 1498(a) liability could result from § 271(g) liability. Zoltek Corp., 672 F.3d at 1317-23 (en banc). The en banc Court concluded that, contrary to prior case law, "[t]he plain language of § 1498(a) indicates that § 1498 operates independently from Title 35" and that "[i]nstead of relying on any infringement sections of § 271, § 1498(a) creates its own independent cause of action." Id. at 1321 (emphasis added).

Although the conclusion of the panel opinion in Zoltek notes that the opinion does not reach "the issue of indirect

---

necessary'" for effective operation of the government (here, securing safe air travel) because the government contractors would remain in "'fear of becoming liable themselves for infringements.'" Zoltek Corp., 672 F.3d at 1324 (en banc) (quoting Richmond Screw, 275 U.S. at 343-45).

infringement, under § 271(b), (c), and (f), which [was] not before [the Court]," the en banc portion of the opinion quoted above appears to undercut the continuing viability of pre-Zoltek cases that recognize a direct interplay between 28 U.S.C. § 1498 and 35 U.S.C. § 271.    However, like the Federal Circuit in Zoltek, this Court need not determine whether the government can ever be held liable under § 1498(a) for the government's § 271(b) or § 271(c) indirect/contributory infringement because the facts of this case clearly demonstrate that Smiths directly infringed on Morpho's patent and that the government, through granting its authorization and consent, affirmatively and expressly accepted liability for such direct infringement.    See 28 U.S.C. § 1498(a) ("For the purposes of this section, the use or manufacture of an invention described in and covered by a patent of the United States by a contractor, a subcontractor, or any person, firm, or corporation for the Government and with the authorization or consent of the Government, shall be construed as use or manufacture for the United States.") (emphasis added). Accordingly, based on the undisputed facts surrounding the government's express "authorization and consent" as to the September 2012 TSA contract, this Court finds that the exclusive and entire remedy provided in § 1498(a) applies to Smiths' infringing sales to TSA as the manufacture of such infringing devices is being conducted "for the Government and with the

authorization and consent of the Government." Id. Morpho, therefore, must obtain its reasonable and entire compensation for such infringement in the Court of Federal Claims. Morpho's request for damages in this Court as to Smiths' large sale to TSA is therefore denied.

### B. Damages Calculation for Accounting Period

Turning to the eighteen infringing units Smiths sold during the accounting period to customers other than TSA, the Court grants Morpho's request for damages in a ratio similar to that found by the jury. At trial, Morpho was awarded damages based on Smiths' sale of 89 infringing units. On nine of those units, Morpho did not seek lost profits.[9] Accordingly, of the 80 units on which lost profits were before the jury, the jury awarded lost profits on 41 units and a reasonable royalty on 39 units. Such divide suggests that the jury selected a lost profits percentage of slightly more than 50 percent of qualifying infringing sales.

Contrary to Smiths' argument in its brief in opposition to Morpho's post-judgment damages motion, nothing about the jury's verdict suggests that the jury concluded that an acceptable non-infringing alternative device "became available" to Smiths

---

[9] At trial, Smiths was ordered to update Morpho on Smiths' sales data through September 6, 2012, and the sale of nine additional infringing units was disclosed through such update. Rather than seek to modify its expert's lost profits calculations to incorporate these additional units, Morpho only sought a reasonable royalty as to these nine additional units.

sometime between September of 2011 and September 6, 2012, the period of infringing sales that were before the jury. To the contrary, based on the evidence presented at trial, the Court agrees with Morpho that the jury verdict suggests that the several alternative non-infringing devices proposed by Smiths at trial each had sufficient drawbacks such that if one or more of such alternatives had been implemented by Smiths during the damages period, Smiths would have lost slightly more than half its sales to Morpho, the only other direct competitor in the market. Accordingly, the Court finds that the proper damages calculation for the eighteen sales made during the accounting period to customers other than TSA is the award of lost profits on nine such sales and the award of a reasonable royalty on the remaining nine sales. See DataTreasury Corp. v. Wells Fargo & Co., 2:06cv72, 2011 WL 8810604, at *5-6 (E.D. Tex. Aug. 2, 2011) (explaining that, because "a patentee is entitled to damages for the entire period of infringement," supplemental damages should be awarded "for any periods of infringement not covered by the jury verdict" and should be "calculated consistent with the damages awarded in the jury verdict"); SmithKline Diagnostics, Inc. v. Helena Laboratories Corp., 926 F.2d 1161, 1164 n.2 (Fed. Cir. 1991) (noting that "[i]f a winning patentee seeks and proves lost profits, he is entitled to an award reflecting that amount," and that a judge awarding damages retains discretion to

17

both "choose between reasonable alternative accounting methods for determining the amount of lost profits" and "a reasonable way to determine the number of infringing units") (emphasis added).

Based on the jury's total lost profits award and the number of qualifying infringing units identified by the jury, the total lost profits per unit (a calculation that included expected ongoing revenue from consumables necessary to operate the device over a number of years) was $39,204.39. As to infringing sales that did not qualify for lost profits but did qualify for a reasonable royalty, the jury awarded a $7,500 royalty on each unit, a calculation that fell between the royalty sought by Morpho and the royalty argued for by Smiths. Applying such figures to the eighteen sales during the accounting period, the nine sales that qualify for lost profits, multiplied by $39,024.39 per unit, result in a total lost profits award of **$351,219.51**. The nine sales that qualify for a reasonable royalty, multiplied by $7,500, result in a total royalty award of **$67,500**. Accordingly, the total damages award for the eighteen units sold during the accounting period, prior to the applicable interest calculation, is **$418,719.51**.

### IV. Post-Judgment Ongoing Damages

There is not currently any evidence before the Court of Smiths making any infringing sales after the judgment was

entered in this case. Nevertheless, rather than pursing a permanent injunction, Morpho's damages motion seeks Court determination of an ongoing royalty rate, an equitable remedy that is sometimes appropriate in lieu of a permanent injunction. Paice LLC v. Toyota Motor Corp., 504 F.3d 1293, 1313 n.13, 1314 (Fed. Cir. 2007). Morpho's motion suggests, and Smiths' brief in opposition confirms, that the opposing parties' viewpoints on an ongoing royalty are so divergent that it appears impossible for the parties to agree on a royalty absent a Court order.[10] See id. at 1315 (noting that although a district court has authority to impose a Court ordered ongoing royalty, a "district court may wish to allow the parties to negotiate a license amongst themselves regarding future use of a patented invention before imposing an ongoing royalty"). The low-likelihood of a successful negotiation is further underscored by the fact that several months have passed since Morpho filed its motion seeking an ongoing royalty and the parties have failed to reach agreement on a post-judgment reasonable royalty. Additionally, at the conclusion of the jury trial, the Court informed the parties, on the record, that a Magistrate Judge of this Court was available to help facilitate any post-verdict discussions between the parties. Trial Tr. 1041, ECF No. 353. The parties

---

[10] Smiths seeks an ongoing royalty of $2,000 per unit, whereas Morpho seeks an ongoing royalty as high as $11,000 per unit, which is 5 ½ times the figure proposed by Smiths.

have not, however, taken the Court up on its offer to help facilitate negotiations. Accordingly, rather than ordering the parties to engage in negotiations that are unlikely to be fruitful, the Court addresses the parties' competing arguments below and concludes that an ongoing royalty for any post-verdict infringing sales shall be in the amount of $9,375 per infringing device.

As previously discussed herein, the jury affixed the reasonably royalty figure for each pre-verdict infringing sale at $7,500. Such rate fell between the royalty rate argued for by Morpho's expert and the royalty rate argued for by Smiths' expert. In the instant motion, Morpho seeks a royalty somewhere between $7,500 and $11,000 per infringing sale, arguing that the jury's finding of validity and infringement puts Morpho in a superior bargaining position as of the date of the judgment (when the hypothetical negotiation takes place for the post-trial royalty) as compared to the position that Morpho was in at the time compensable infringement began (the date that the jury relied on as the date of the hypothetical royalty negotiation). In contrast, Smiths argues that the royalty should be less than $7,500 and as little as $2,000 based on: (1) the fact that Smiths purportedly made substantial strides toward a "design around" of Morpho's patent in early 2013; (2) the fact that Smiths, at some point in the future, plans to retrofit

infringing devices sold after December 19, 2012 with non-infringing technology; (3) the fact that a third-party competitor has entered the "trace detector" market; and (4) the fact that Morpho is no longer seeking a permanent injunction.

Having considered all of Smiths' arguments for reducing the ongoing royalty below the amount awarded by the jury, the Court finds that such a reduction is not appropriate in this case. Although Smiths argues that it is far along in the process to design around Morpho's patent, and that Smiths will retrofit any infringing units sold after December 19, 2012 with such non-infringing technology, Smiths acknowledges that its design around work did not commence until _after_ the jury returned its verdict of validity and infringement and Smiths is still speculating as to when such design around will be complete as well as whether it will be acceptable to Smiths' customers.[11] Smiths has also failed to introduce any evidence quantifying the impact of the entry into the market of an additional competitor. Finally, Smiths has failed to demonstrate why Morpho's decision not to pursue a permanent injunction, which was made after the judgment was entered, should result in a reduction of the

---

[11] The Court further notes that Smiths agrees that the "hypothetical negotiation" for an ongoing royalty occurs at the time of the judgment, and two months after the judgment was entered Smiths was still speculating as to how many months it would take to complete and fully implement its ongoing post-judgment efforts to effectuate a design-around.

ongoing royalty rate applicable to what, post-verdict, appears to amount to willful infringement of a valid patent.

In contrast to the above, Morpho offers a compelling argument that after the jury found Morpho's patent valid and found that Smiths' commercialized product infringed on Morpho's patent, Morpho was in a far superior bargaining position than it was in more than a year earlier, the date the jury relied on in affixing the pre-verdict royalty rate at $7,500. Notably, at this earlier date, Smiths not only had a reasonable basis to argue that its product was non-infringing, but clearly believed, as demonstrated by its vehement arguments throughout this case, that Morpho's patent was invalid as anticipated and/or invalid as obvious based on prior art. In contrast, after the jury's verdict, any post-infringing sales to third parties were/are made with a substantially diminished belief that such sales are permissible non-infringing sales. See Amado v. Microsoft Corp., 517 F.3d 1353, 1361-62 (Fed. Cir. 2008) ("[E]asily dispos[ing]" the defendant's argument that the district court was limited by the jury's reasonable royalty award because "[t]here is a fundamental difference . . . between a reasonable royalty for pre-verdict infringement and damages for post-verdict infringement," and explaining that prejudgment damages are affixed within the context of uncertainty regarding infringement and validity, whereas post-verdict "a judgment of validity and

22

infringement has been entered . . . [and] the calculus is markedly different because different economic factors are involved"); <u>ActiveVideo Networks, Inc. v. Verizon Communications, Inc.</u>, 694 F.3d 1312, 1343 (Fed. Cir. 2012) (noting that "although <u>Amado</u> dealt with the imposition of royalty damages while an injunction was stayed during appeal, [such] holding applies with equal force in the ongoing royalty context").

In sum, having considered both parties' arguments as to changed circumstances between September of 2011 and the date of the judgment in December of 2012, as well as the impact of such circumstances on the parties' respective bargaining positions, the Court finds that an ongoing royalty 25% higher than that found by the jury is appropriate in this case.[12]   Accordingly,

---

[12] Morpho has not specifically invoked 35 U.S.C. § 284, which governs "enhanced damages" based on a finding of willful infringement. Furthermore, Morpho's current request for an ongoing royalty of no greater than the $11,000 figure advanced by Morpho's expert at trial further suggests that Morpho is not seeking "enhanced" damages.  If a request for enhanced damages had been made and post-trial willful infringement was found to have occurred, this Court would balance the nine factors set forth in <u>Read Corp. v. Portec, Inc.</u>, 970 F.2d 816 (Fed. Cir. 1992), abrogated on other grounds by <u>Markman v. Westview Instruments, Inc.</u>, 52 F.3d 967, 975 (Fed. Cir. 1995) (en banc)).  If called upon to weigh such factors, this Court would similarly conclude that a 25% increase in the reasonable royalty set by the jury in this case was appropriate because several of the <u>Read</u> factors favor Morpho, but others favor Smiths.  Specifically, the most compelling factors favoring Morpho are that the jury found that Smiths copied Morpho's patented product, and that Smiths' non-infringement and invalidity defenses have been squarely rejected by the jury—undercutting Smiths' "good faith" belief that its product was non-infringing.  In contrast, the most compelling factors favoring Smiths are Smiths' asserted remedial action (including its claimed plan to retrofit infringing

after considering all the arguments advanced by the parties, and the evidence adduced at trial, the Court sets the ongoing royalty for post-judgment infringing sales at $9,375 per infringing device.

## V. Conclusion

For the reasons set forth above, Morpho's motion is **GRANTED**, in part, and **DENIED**, in part.

Prejudgment interest is **AWARDED** at the prime rate, compounded quarterly, and post-judgment interest is **AWARDED** at the statutory rate set forth at 28 U.S.C. § 1961.

Damages from the accounting period that can be recovered in this Court are limited to the eighteen sales made to customers other than TSA because the United States has directly assumed liability for the infringing sales made to TSA, and Morpho is required to recover its reasonable and entire compensation for such infringement in the United States Court of Federal Claims. As to the eighteen sales before this Court, lost profits are awarded on nine sales and a reasonable royalty is awarded on nine sales, for a combined total of $418,719.51.

As for any post-judgment infringement by Smiths, the ongoing royalty rate for each post-judgment infringing sale is $9,375.

---

devices), as well as the relatively short time frame of actionable infringement.

The Clerk is **INSTRUCTED** to send a copy of this Opinion and Order to all counsel of record.

**IT IS SO ORDERED.**

/s/ Mark S. Davis

Mark S. Davis
UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
October  17  , 2013